14-3866 Trumbull Cty Bd of Commissioners v. Village of Lordstown OH 15 minutes for the plaintiff, 15 minutes to be shared by the defendants Mr. Hoy for the appellant Mr. Hoy for the appellant Good morning. May it please the court. My name is Steve Hoy. I'm reserving four minutes of rebuttal in this case. I'm with Frost Brown Todd. We represent the appellant, the county commissioners with me today is my co-counsel Thad Driscoll, my other co-counsel Jim Brutz, the assistant county prosecutor. He could not be here today, but he was on the case as well. Your Honor, this case is about what's called the anti-curtailment statute. It protects USDA loans for infrastructure, for water and sewer. The side is 7 U.S.C. 1926B. That statute is the... ...to violate that statute. They have entered into service contracts, O&M and treatment contracts, which included service, provision of service to our existing customers, customers in our district, General Motors, that constitute almost 25% of our revenue. I don't mean to... No, but we're... I didn't find that contract in the record. Yeah, there's two service contracts. There's an O&M and a treatment contract entered into between the village and the city to provide service for the new wastewater treatment lines that were installed, part of which was to serve our existing customers in General Motors. Yeah, there's not a contract with GM. There's a contract between them creating the ability to serve GM with the new lines. They're not serving GM. They're not serving GM. They are not. That's correct. Right. They haven't done anything to start serving GM. That's correct. They haven't contracted with GM to serve GM. They've installed the sewer lines and they've entered into the service contracts between themselves. Which they're not using to serve GM. That is correct, Your Honor. Yes. And they recognize the statute that prevents them from doing that. So why is this case right? The case is right because all of the conditions in the statute have been met. We don't have to prove that they're on the front doorstep of General Motors knocking on the door. This court's decision is in Ross County and in Adams County because the statute is broadly written. The statute says that during the term of the loan, no curtailment of service is allowed, which is a very broad term. What's been curtailed? That's what I'm really trying to figure out. What has been curtailed? Again, Your Honor, it goes to the definition of curtailment, which is incredibly broad, which includes just any acts that they take, the efforts that they undertake to provide service. Are you still providing service to GM? Yes, we are. So your service to GM has not been curtailed. So you're saying— As this court interprets— Sick, sick, beat dog, dog won't bite pig, pig won't go over the stile, so we won't get home tonight. And we should be saying, yeah, right, so we're going to issue an injunction. Your Honor, the statute is required to be broadly construed, and this court has construed it broadly in two cases that include— No, I'm trying to answer the question. In Ross County, this court affirmed an injunction for the county against the city of Chillicothe just for construction of sewer lines, no solicitation at all. Just constructing the sewer lines was considered to violate the statute, leading to an injunction. That's one. In this court's case in Adams County— This is sort of a follow-up to that. It might make sense if the people you're suing were doing something that could be done only for the purpose of curtailing. You could say that it's a step towards curtailing and ought to be stopped because the only purpose is towards curtailing. I could understand that, but I don't see how that's the case here where the legal prohibition only lasts as long as they're paying this federal debt, so they could be anticipating when that time period ends. That wouldn't be curtailing, would it? Under this court's precedent, Your Honor, it would be curtailment. Well, you say that, but it doesn't make sense. In Ross County and in Adams County, it was only a contract, no construction at all. It was a contract that would have allowed Manchester to provide the water to West Union, which was already being served by the indebted association. That wasn't joined by this court as constituting illegal curtailment. They hadn't even constructed a sewer line yet. So here we have not only sewer lines, we have contracts. We have a design engineer who testified that this was intended to serve GM. Some questions are being asked. I'm sorry. Yes, Your Honor. There is no contract with GM, is there? There is no contract with GM. In this case you're citing, there was a contract with the people in the area that they weren't supposed to be serving service to? No, the contract here is between— I'm talking about the contract in the case you're citing. In Adams County in 2000, this court made a finding affirming an injunction for nothing more than a contract that would have allowed— Between whom? It was between the village of West Union and the village of Manchester. I don't know who that compares to. Who would that compare to in our case? In this case— If you're drawing a comparison between cases, you have to compare the parties. I understand. In our case, we don't have that contract. That would be a contract with GM, right? Yeah, we don't have a contract with GM. So the case is distinguishable then, right? I would agree with that. It is distinguishable, yes. I guess what I'm struggling with is what is your injury at this point in time? I mean, the sewage is flowing as it ever did, right, through your pipes from GM. GM's paying their bills, presumably. What is your injury? Our injury is— Be honest, Your Honor. Our injury is based on the language of the statute. What is your injury? The injury is that we have people who use the public's money, over a million dollars, to bring a sewer line up to the back door of GM. Okay. That's one. So it's a risk. It's a risk. You say that's not— Right. We can't count it today because you're right. The valve's not in it. It hasn't been turned. Your Honor, what is your injury? It's not an injury. It is not. Taxpayers standing here. But under this statute, that's what's most important. Under this statute, it is an injury. And it's an injury that this court has called an injury in previous cases under less circumstances than this. In 2011, we called— Can I ask you a question? Yes. I could see how that's an injury if turning the thing on would automatically be an injury, but I don't see how that's the case if, once the loan's paid off, it's perfectly okay to use that. They're just building something, for all we know, that's designed for the day when it's legal to use. And it's easier to build it now than it would be to build it later, when it is legal. So we're building something that we hope and pray that we'll be able to use legally in the future. Your Honor, there are two responses. Everybody's going to wait. You can say their taxpayers shouldn't have paid for that, but that's their taxpayers' problem. That doesn't hurt you, does it? Right. Right. There are two things to that. One, the language that Congress put in the anti-curtailment statute is designed to give them the greatest protection to make sure they get paid. That's paramount. No one has done one single thing to infringe on that loan being paid, have they? They have curtailed the service as defined by this court under the statute. Not one single drop of sewage has yet gone into their pipes. That's correct, is it not? That's correct, Your Honor, yes. What's really been curtailed here, I'm guessing, is the ability to get attorney's fees. Is that right? Without the injunction, without. There are two things, Your Honor. One is their statement that we now know that we can't get this service because of the loans until they're up. That didn't happen until the case was over two years old and we had filed the lawsuit and it's an affidavit at the end of summary judgment. It's a little too late at that point. But they hadn't violated the statute. I'm sorry? They hadn't violated the statute unless we are willing to say that curtailment means thinking about doing something. Your Honor, they did much with all due respect. They did a lot more than just think about it. Well, they built the lines so they would be able to. They built the lines so that when they could legally contract to provide the service, they'd be in a position to do that. They did, and I don't think there's any dispute about that. But unless we are willing to say that curtailment means the possibility of being able to do something when you're legally allowed to do it, then there hasn't been any curtailment. Well, unless you're going to overturn Ross County in 2011. I thought you told us that in Ross County the contract was... No, Ross County is different from Adams County. In Ross County, in Ross County is 2011. Who's the contractor? In Ross County, all they did was construct sewer lines. No contracts, no direct solicitation. This court found curtailment and affirmed the injunction. Those sewer lines were in the territory of the... Yes. ...that was subject to the loan. They were, and they were here, too. ...the territory that's subject to the loan, right? No, no, these sewer lines, this million dollars of sewer. Some is out, some is in. A million dollars of the project is in our service district, going right in our district, right up to the back door of General Motors. Yes, it is. Let me ask you, well, I think... My time is up. I'm happy to... Go ahead, Your Honor. No, that's okay. Okay, thank you, Your Honor. Good morning, and may it please the court. My name is Matthew Van Such, and it's an honor to be here to represent the village of Lordstown. It was also represented here today by the Honorable Mayor Arno Hill. I would like to use eight minutes of the 15 minutes allotted to appellees and share the seven minutes with my co-counsel, Mr. Tom Wilson. We asked this court to affirm the district court's decision for several reasons. First, the protection afforded to rural water associations like Trumbull County by Section 1926B is triggered by competing municipalities' actual provision of service to an indebted association's customer. Second, the village has not provided such service or even attempted to provide such service to the county's existing customer, General Motors. Third, the county's service that it has made available to General Motors has not been limited or curtailed by the village's action. Injunctive relief is not necessary to ensure the continued uninterrupted service to GM by the county. Why wouldn't you, at the outset of this litigation, indicate that you will not provide this service until the loans are paid off? Your Honor, I cannot answer that question today. It would have been handy if you had. You know, I might have avoided an injunction trying to get you to not do that. It might have been, and as the mayor and I were willing to state right now that you will not. That is correct, Your Honor, that under the statute. It's an undertaking you're giving to the court that's on the record that your village will not,  That is correct because that statement has already been made to the district court, and we are relying on that statement, yes. Your Honor, this case has been going on since I've been an attorney. This was actually one of the first cases that I started working on 10 years ago. So we're here at what we believe is the final step in this case, and I would like to distinguish, if I could, the Ross County case, which Your Honor correctly distinguished was that the disputed area here in that case, or in that case was truly disputed, and pipes were run through that disputed area. In this case, we have distinguishable on two points, primarily on one. The mobile home park, we have the legal right to serve. That's been conceded, and so that 9,400 feet, which the district court said was intended to serve General Motors, don't believe is an accurate statement of the record, because without that 9,400 feet, we wouldn't be able to serve the Imperial Mobile Home Park, and the county has argued before that they could just simply cut across the street and go to the county's line, but that's not relevant to the issue. The county is not challenging at this point, or on appeal, your ability to provide service to the mobile home customers, correct? Correct, and we believe that that's an important distinction. You really can't say that you haven't done things which are going to cause them to fear losing their biggest customer. No, I will not. When you spend a lot of money, and it looks like the purpose of spending that money is to take away their customer, you've got to say that they're nervous over there that you're going to take away their customer. Isn't that true? That is very true, Your Honor, and I will not deny that. If you can't legally take away their customer for a long time, maybe they could seek an injunction to keep you from taking away their customer, and then when you wait for months, years, how long before you even say, we won't take your customer until it's legal to do so, that makes it look even more like you might be willing to take their customer. I can see that, and so now you say, oh, well, we never intended to do that. It's a little late in the day, though, isn't it? Well, Your Honor, I'd like to make two points on that. Number one, GM is critical to the future of the Mahoning Valley, and the county and the village, I would think, would both concede the point that we both want to make sure that it stays there. I understand that, but you both want it to be your customer. Well, there was some talk of that, yes, happening in the future, but let me answer specifically. You don't want it to be your customer. You don't not want it to be your customer and spend hundreds of thousands of dollars on the hope that eventually it will be your customer. Your Honor, you asked about the injunction, and we cited an Eighth Circuit case, the Kearney case, in which the city had promised to sell water to a certain property owner if the properties were detached from the rural water district, and the Eighth Circuit said, we can't give you an injunction that says that if something happens, you can't do this, and that's the situation that we're in exactly in this case. What's the name of that case again? It's the Kearney case, K-E-A-R-N-E-Y. It was cited in our brief, and so in that case, there was a detachment proceeding that was going on, but the Eighth Circuit said, we're not sure if that detachment is actually going to happen, and so that's what makes it speculative, and the injury here, Your Honor, is not certainly impending, which is the standard for the ripeness and which would be appropriate for a permanent injunction. If once the statute is no longer a problem, that is to say once the loan has been paid, so there isn't any statutory impediment to your trying to compete for this business of GM, is there any other legal reason why you couldn't compete for that business? I'm not aware of any other reason, no, Your Honor. Not based on appeal, at least. Certainly not. So how would your getting that business after the statute is no longer applicable, after the loan is paid, how would that constitute a legally cognizable injury? Well, Your Honor, are you asking when might it become certainly impending such that the district court would have jurisdiction to hear that claim? Well, I'm looking a little bit at ripeness, but what I'm trying to figure out is, right now the problem is that the statute says nobody can do anything that's going to in any way curtail this service because that's how we get paid back. When that is no longer the case, is there any legal impediment to your competing to serve GM, competing with the county to serve GM? I'm not aware of any, Your Honor. So how would your getting that, getting GM's business, be a legally cognizable injury to the county? I don't believe that it would be. Okay. And I want to just address one related point on that, and I believe it was raised before. You cannot simply turn or press a button and suddenly GM is connected. There's practical construction related and legal steps that would have to take place, and because it involves public entities, would take several months to do and would be happening in public, and I counted seven of them. And if you would indulge me for one second. How could they make that much difference if you're going to go through all seven? Well, I counted seven different... Whether you push the plug or turn the spigot or whether you have to go through seven legal hoops before you turn the spigot. Well, I think it's important, Your Honor, because what it's saying is that there, as we discussed with the ripeness cases, that there would be opportunity for the county to come in should any one of those steps happen and say, look, you're doing something other than just putting in a line. You're short on time. So are those steps in your brief? They're not, Your Honor. I do want to just ask you about, you know, is this a standing? Is this... You know, if we're analyzing standing here, you know, that sort of thing, is this just the absence of an injury altogether right now in your view? Is it a ripeness thing? How would you distinguish? Which standing sub-variant do you think is applicable here? Your Honor, two answers. One, we don't believe that what we have done has violated the statute, which would then give rise to an injunction. And just as in the LIAC's case, all of those steps may still be met, but the court may still not enter into an injunction. And I believe that it's more of a ripeness issue because there is not a certainly impending. How would you distinguish between just no injury altogether, see e.g. Lujan versus the ripeness issue here? What's the difference? If I may answer, Your Honor, I'm not sure that... I think it melds in between the two of them. And I really couldn't answer that question. Okay, that's fair. Thank you, Your Honor. Thank you. Thank you. Good morning, Your Honors. My name is Tom Wilson. I have the privilege here of representing the city of Warren, Ohio. We are one of the two defendants in this particular case. We move the court today to confirm the decision by the district court granting judgment to the city of Warren on all counts, and in particular the only remaining counts that have been presented to this court, the 8th, 9th, and 10th of the plaintiff's complaint. The plaintiff here has, from the time this case began until the time we got the decision from the trial court until the present, made some significant changes in the direction of their case. And I think, Your Honor, that would help answer perhaps the last question as to whether this is a ripeness issue or there is simply no evidence of a violation of the curtailment statute. When this case began, they were attempting to stop any and all effort by the village to provide sewer on the east side. And they have since stepped away from that and said, go ahead, you village put the sewers in on the east side, go ahead, enter into your treatment contract as well as your contract for O&M operation and maintenance with the city of Warren. We're not worried about any of that. Our only concern here is potentially losing our largest customer, which is General Motors. And I think by taking that step after the decision came from the district court, they have not only highlighted that they aren't able to prove a violation of the statute, certainly not as to the city of Warren, but also that this matter is not ripe because they continue to serve General Motors, the county does. And as to my client, the city of Warren, our contract, as the trial court found, between the county and the city has never been breached and that we continue to accept all the affluent provided by the county in this part of our county. And we have never been unable to service the contract that we have with them. And then as to the contracts with the village, we have, as the trial court pointed out, certainly the constitutional authority as a municipality to enter into those contracts. So having not violated any contract we had with the county, having the authority to enter into those, and factually all we have done, we take the affluent from this part of the county, we are, if you will, the only game in town, and we accept it and we've continued to accept it and we will continue to do that in the future. By agreeing to take... I don't see, if their only argument at this stage of the appeal is the 1926 argument about curtailment, I don't see how there's any claim against you left at all. Your Honor, I agree 110%. Okay then. Thank you. I'm sorry, John. I'm done. How does your posture or position in the case differ relative to your codependent? I mean, are you identically situated with respect to all the issues or factually you're not implicated in some? I think, Your Honor, that the difference is, if you would, we, the city of Warren, are one step removed from any claim as to the village. We didn't. We were asked only to accept the affluent. We already take General Motors affluent, if you will, and they came to us and they said, and the contract does not identify General Motors in any way, shape, or form, neither the ones we have with the county nor the ones they have with the village. Thank you. That's helpful. Whichever hill the sewage rolls down, it rolls into your city. Absolutely right, Your Honor. I have learned in my years having the opportunity to do this that if there are no other questions, even with time remaining, I will bid you adieu. That's a good lesson for these youngsters over here. Thank you, Your Honors. Thank you, counsel. Rebuttal. Thank you, Your Honors. There is a statute, Judge Batchelder, that would bar either the city or the village from taking GM away from the county once the loans are up. It was an issue not brought up. It's 6117.04.5 and 6 of the Ohio Revised Code. It's not an issue in the case. That statute says that once we have the sewer lines there, whether or not that area becomes incorporated or is annexed into someone else, we keep the sewer service. That's an Ohio statute, 6117. We don't have to think about that, right? Excuse me? We don't have to think about that, right? No, but I'm just answering Judge Batchelder's question. So they didn't just put these lines in, Your Honor, thinking that, oh, gee, when the loans are up, we'll have complete legal authority to go ahead and put it in. There's a statute that's been upheld by the Ohio Supreme Court and the village. So if you want an injunction based on that statute, you could file for one and ask for it. But you can't get an injunction based on that statute here. We're seeking the injunction under the curtailment statute here, correct, Your Honor, because the loans are pending. And obviously that's the most paramount concern. The only one you've preserved on appeal. Yes, Your Honor. The only one you've preserved on this appeal. Correct. The reason we don't care about the arrest of the east side sewers is because it's never going to pay for itself. We've done the analysis. We didn't follow it up. So we're not going forward with those issues. We're happy to have it. Thank you. What's important to us, as far as the ripeness issue, in Abbott and in the Sixth Circuit's case in Deja Vu of Nashville, all it has to be is threatened, sufficiently threatened, for it to be ripe as opposed to being unripe. If you and I have a contract and we have a disagreement over the legal rights of the parties under that contract, I don't have to wait until you violate the contract. I can go to court and get a declaration of what our respective rights are under the contract. It's threatened. But if it looks like they're going to violate it, but if it looks like they're going to do something legal, what it looks to me, I don't know. We talk about motivations. I don't see that it's necessarily attorney's fees. Maybe it is. It seems to me what you're trying to do is to make it harder for them to do what is legally permissible for them to do once the loans are paid. It's not, as I responded to a question, it's not legal for them to do it when the loans are up. There's a separate statute in Ohio. I understand, but we're not even looking at that. No, no. Part of this issue is attorney's fees. I'm not here. I'm not going to deny that. We wouldn't even be here if they had been willing to enter into an injunction at the time the lawsuit was filed. Without the injunction, we don't have the protection. We have an affidavit of a former mayor that's not binding on either of the parties, neither one. So all they have to do is knock on GM's door. Can I ask a question? Yes, sir. At some point, your loans are going to be up. At some point, the proscription of the federal statute 1926 ends, correct? They are entitled to put themselves in a position to compete with you, at least so far as 1926 is concerned, when that time comes. They don't have to sit on their hands and, in effect, give you an additional period, in fact, of monopoly because they've been able not to do any digging before then. What am I missing? That's not what this court held in Ross County. Okay. See, I'm relying on that case as precedent. In Ross County, all they did was build the lines. They didn't solicit. All roads converge in Ross County. Yes, Ross County is dead on with this case. Okay. Thank you, Your Honor. Thank you, counsel. The case will be submitted. There being no further matters to be argued this morning, the clerk may adjourn the court.